# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 1:18-CR-350 |
| v. | ) Judge Dan Aaron Polster |
| JOSE COLON, | ) **OPINION & ORDER** |
| Defendant. | ) |

Before the Court is Defendant Jose Colon's Motion to Suppress, Doc #: 21. Because the Court concludes that a state probation officer's home visit morphed into a warrantless search by multiple law enforcement officers, the Court **GRANTS** the Motion.

## I.  Background

On September 19, 2011, Colon pleaded guilty to one count of Aggravated Robbery, in violation of O.R.C. § 2911.01A(1), with a Firearm Specification pursuant to O.R.C. § 2941.141. *See State of Ohio v. Jose L Colon*, CR-11-552919-A. The Cuyahoga County Court of Common Pleas sentenced Colon to six years imprisonment and five years of Post Release Control.[1] *Id.* On or about July 5, 2017, Colon was released from prison and placed on Post Release Control. Gov't Ex. G. As a condition of his supervision, Colon was notified that "[p]ursuant to [O.R.C. §§] 2951.02 and/or 2967.131, I am subject to warrantless searches." *Id.*

On May 29, 2018, an FBI task force under Operation CLE arrived at Colon's residence. Hearing Trans., Doc #: 26 at 26:23-25. These Operation CLE law enforcement officers were part of the component "RAVEN." *Id.* at 27:2-5. RAVEN targets probationers to ensure that they are

---

[1] Post Release Control is the State of Ohio's form of probation. *See* O.R.C. § 2967.28.

in compliance with the terms of their supervision. *Id.* Although it is unclear how many law enforcement officers arrived at Colon's residence on May 29, 2018, three officers testified to their direct involvement: Ohio Adult Parole Authority ("APA") Officer Brett McCort, Cuyahoga Metropolitan Housing Authority ("CMHA") Police Officer Derik Rodriguez, and FBI Agent Kerry McCafferty.

When the task force officers arrived at Colon's residence, they observed Colon walking from the house toward his pickup truck parked in front of the house. *Id.* at 57:18-20. The officers approached Colon, who told them he spoke little English. *Id.* at 57:23-25. Officer Rodriguez—who is fluent in Spanish—advised Colon that the task force officers were "with parole." *Id.* at 58:2-4. Officer Rodriguez then began to conduct a pat down for weapons. *Id.* Officer Rodriguez stated that he conducted this pat down because of Colon's prior aggravated robbery conviction and his involvement in a Spanish prison gang while incarcerated. *Id.* at 65:5-12. Prior to that day, Colon's probation officer, APA Officer Angelique Woods, testified that she believed that Colon was in compliance with the terms of his supervision. Doc #: 26 at 20:16-25. Indeed, none of the testifying officers could articulate any facts that showed that Colon was either in violation of his terms of supervision or had resumed gang activities post-incarceration.

During the pat down, another officer pointed out to Officer Rodriguez that Colon's left hand was closed. *Id.* at 58:23-25. Officer Rodriguez testified that in Colon's hand was a looseleaf sheet of paper containing marijuana residue—barely enough to roll a cigarette. *Id.* at 59:1-6. Officer Rodriguez then placed Colon in handcuffs to detain him. *Id.* Officer Rodriguez testified that he had a cell phone with camera capabilities at the time but did not photograph the marijuana. *Id.* at 66:16-24. However, the officers photographed all other evidence found against Colon, including traces of marijuana found in the home. *See, e.g.*, Gov't Ex. A. Officer Rodriguez also

2

did not confiscate the marijuana or retain it as evidence. *Id.* at 66:25-67:5. No other officer testified that he saw the marijuana.[2]

As Officer Rodriguez detained Colon, the other officers proceeded to the house to conduct what Officer McCort referred to as a "home visit." *Id.* at 33:23-25. Officer McCort testified that these home visits are part of his responsibilities as a probation officer. *Id.* at 25:20-22. First, the probation officer must conduct a safety check—which Officer McCort described as a sweep of the house—making sure that no one else is in the home and no contraband is in plain view. *Id.* at 48:21-25. Colon's girlfriend and her small child were home at the time the officers entered his residence.[3] When asked by the Court whether this sweep of an entire home is typical for a "home visit" by a probation officer, Officer McCort responded, "[t]hrough Operation RAVEN, yes."[4] *Id.* at 46:2-5. But Officer McCort, the only probation officer on the scene, did not conduct the home visit safety check; FBI Agent McCafferty did, along with a detective from the Gang Impact Unit. Doc #: 26 at 74:3-16. During Agent McCafferty and the detective's sweep of the home, they discovered ammunition in plain view on a kitchen table. *Id.* They then notified the rest of the task force and conducted a thorough search of the house, finding several firearms and additional ammunition.

---

[2]
| Q: | Can you describe [the marijuana] to us? |
| McCort: | I did not personally see it. I was advised it was balled up in a piece of paper. |
| Q: | Can you provide us with a photograph of it? |
| McCort: | No. |
| Q: | How come? |
| McCort: | It was not kept. |

Doc #: 26 at 42:13-19.

[3] None of the officers testified that they personally saw Colon's girlfriend open the door and let the officers in or consent to the officers' entering her home. In fact, Agent McCafferty testified that the officers had already entered the home when they made contact with Colon's girlfriend. Doc #: 26 at 73:14-18.

[5]
| The Court: | So did someone instruct you that anyone in this Operation RAVEN or CLE or whatever, you can conduct a full—full sweep of a home? |
| McCort: | Yes. It's for security. |

Doc #: 26 at 46:22-25.

3

It is unclear from McCort's testimony exactly where he was or what he was doing until Agent McCafferty notified the rest of the task force that he had found ammunition in plain view. Officer McCort testified that, after Agent McCafferty found the ammunition, he personally took part in the thorough search of the home and located additional firearms and ammunition. *Id.* at 36:19-37:13. But up until Agent McCafferty found the ammunition, McCort refers to the officers' collective actions, not his own. *See id.* at 34:11-13 (Q: And did you conduct a safety check here on Mr. Colon's residence? A: Yes, *we* did.); id. at 35:10-13 (Q: And so, next you identified Mr. Colon's girlfriend and juvenile in the house, what did you do with them? A: *We* placed them, sat them on the couch as another officer stayed with them.) (emphasis added).

On June 27, 2018, Colon was indicted on one count of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). Doc #: 1. He filed the instant Motion on September 13, 2018 and a Supplement to the Motion on September 14, 2018. Doc #: 21, 22. The Government filed its Response on September 24, 2018. Doc #: 23. The Court held a Suppression Hearing on October 16, 2018. Doc #: 24. At the conclusion of the hearing, the Court directed the parties to file supplemental briefings on the difference between an unannounced "home visit" conducted by a probation officer and a search based upon reasonable suspicion pursuant to O.R.C. § 2967.131(C). *Id.* The Government filed its Supplemental Brief on October 23, 2018. Doc #: 27. Colon filed his Response to the Government's Supplemental Brief on November 2, 2018. Doc #: 30. The Government filed its Reply on November 5, 2018. Doc #: 31.

## II. Analysis

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement

that searches be 'reasonable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). "However, the Supreme Court has made clear that the nature of the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007). Instead of probable cause, the Fourth Amendment requires "no more than reasonable suspicion to conduct a search of [a] probationer's house." *United States v. Knights*, 534 U.S. 112, 121 (2001). The Government argues that the search of Colon's home did not violate the Fourth Amendment because: (1) the officers had reasonable suspicion to enter the home; and/or (2) the task force officers conducted a "home visit" pursuant to the special needs exception. The Court will address each in turn.

### A. O.R.C. § 2967.131(C)

The Fourth Amendment permits warrantless searches of probationers when a constitutional state law authorizes the searches. *See Sampson v. California*, 547 U.S. 843, 856 (2006). To comport with *Knights*, a state statute cannot require less than reasonable suspicion to conduct a search. *United States v. Knights*, 534 U.S. at 121. O.R.C. § 2967.131(C) allows Ohio probation officers to conduct warrantless searches of probationers' homes if they have reasonable grounds to believe that the probationers are violating the law or the terms of their supervision. The Sixth Circuit has already held that O.R.C. § 2967.131(C) is constitutional. *United States v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003). The Government argues that the marijuana found on Colon's person and the ammunition found in plain view during the sweep of his home gave the officers reasonable

grounds to believe that Colon was violating the law and the terms of his probation. Doc #: 23 at 6-8. The Court disagrees.

First, as the Court explained during the Suppression Hearing, any evidence of the alleged marijuana on Colon's person was handled so poorly and so loosely that it could not justify the search pursuant to O.R.C. § 2967.131(C). See Doc #: 26 at 83:1-3. Officer Rodriguez was the only officer who testified to seeing the marijuana allegedly in Colon's hand. *Id.* at 59:1-6. No other officer testified that he saw the marijuana. *Id.* at 42:13-19. Officer Rodriguez testified that he had a phone with camera capabilities and could have photographed the marijuana. But he did not do so. *Id.* at 66:16-24. Officer Rodriguez also could have confiscated the marijuana or retained it as evidence against Colon. *Id.* at 66:25-67:5. He did not do that either. Neither Officer Rodriguez nor any other officer photographed the marijuana or retained it as evidence. Additionally, no charges, either state or federal, were ever filed against Colon pertaining to the marijuana. However, the officers meticulously photographed all other evidence found against Colon, including traces of marijuana found in the home. *See, e.g.*, Gov't Ex. A. Officer McCort even testified that he carefully arranged a gun found on the top of a cabinet in the home so that other officers could "visualize, see it, and come through with photos." *Id.* at 37:25-38:3. Given the fact that only Officer Rodriguez saw the alleged marijuana and the officers did not document or keep it despite documenting and retaining all other evidence, the Court has serious doubts as to whether the alleged marijuana actually existed.

Further, Officer Rodriguez only discovered the marijuana after conducting a pat down that may have violated *Terry v. Ohio*. Officer Rodriguez testified that upon approaching Colon, he immediately conducted a pat down for weapons. Doc #: 26 at 58:2-4. He stated that he conducted the pat down because of Colon's prior aggravated robbery conviction and his involvement in a

Spanish prison gang while incarcerated. *Id.* at 65:5-12. It was during the pat down that Officer Rodriguez allegedly discovered the marijuana. *Id.* at 58:23-25. "The Fourth Amendment permits officers to stop and frisk individuals reasonably suspected of criminal activity." *Wilkerson v. City of Akron, Ohio*, Nos: 17-4108/4157, 2018 WL 4959674 at *3 (6th Cir. Oct. 15, 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). To justify a stop, an officer needs "specific and articulable facts" that, taken together, would cause a reasonable officer to suspect criminal activity." *Terry*, 392 U.S. at 27. The officer must show that "a reasonably prudent man in the circumstances" would have "reason to believe that he [wa]s dealing with an armed and dangerous individual." *Id.* The fact that Colon was previously convicted of aggravated robbery and was affiliated with a gang while incarcerated is insufficient to justify the pat down. Officer Rodriguez could articulate no facts that suggested that Colon was currently armed or had otherwise violated the law or his probation. Doc #: 26 at 58: 17-20. While neither the Government nor Colon argued this issue, the Court has serious questions about the lawfulness of the pat down. Accordingly, the Court finds that the alleged marijuana is not sufficient evidence to establish reasonable grounds pursuant to O.R.C. § 2967.131(C) to conduct a search of Colon's home.

Likewise, the ammunition found in plain view in the home cannot justify a search pursuant to O.R.C. § 2967.131(C). The officers found the ammunition in plain view *after* entering the home. Law enforcement officers cannot enter probationers' homes without justification. Colon's probation officer, APA Officer Angelique Woods, testified that she believed Colon was in compliance with the terms of his supervision prior to the day of the search.[5] Doc # 26 at 20:16-25. Further, no other officer could articulate any facts that showed that Colon was in violation of his terms of supervision or had resumed gang activities post-incarceration. Therefore, the officers

---

[5] Officer Woods was not present on May 29, 2018 and did not take part in the home visit. Doc #: 26 at 20:13-15.

7

did not have reasonable grounds to believe that Colon was in violation of the law or his terms of supervision *at the time that they entered the home*. Accordingly, O.R.C. § 2967.131(C) cannot justify the other officers' entry into the home.

However, the ammunition found in plain view could have provided the grounds for the officers to search the residence, as long as another exception to the Fourth Amendment's warrant requirement justified their initial entry into the home. The Government argues that the officers were lawfully inside the home to conduct a "home visit" pursuant to the special needs exception. As discussed below, the Court disagrees that the officers were conducting a home visit because Officer McCort, the sole probation officer on the scene, did not assist in the home visit.

**B.** **"Home Visit"**

Another exception to the Fourth Amendment's warrant requirement, the "special needs doctrine," may apply "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 843 (2002). "In special needs cases, courts are tasked with balancing the nature of the intrusion on the individual's privacy against the promotion of legitimate government interests." *Kanuszewski v. Michigan Dep't of Health & Human Servs.*, No. 18-CV-10472, 2018 WL 3753720, at *8 (E.D. Mich. Aug. 8, 2018) (citing *Earls*, 536 U.S. at 829). Although the Sixth Circuit has not expressly held that a "home visit" by a probation officer falls within the special needs exception, other circuits have. *See e.g.*, *United States v. LeBlanc*, 490 F.3d 361 (5th Cir. 2007); and *United States v. Reyes*, 283 F.3d 446 (2d Cir. 2002). Further, Ohio probation officers routinely conduct home visits to ensure that probationers comply with the terms of their supervision. *United States v. Cofer*, No. 3:09-cr-010, 2009 WL 2824479, at *5 (S.D. Ohio Aug. 26, 2009). Thus, the Court concludes that a "home visit" by a probation officer does fall

within the Fourth Amendment's special needs exception. However, the scope of what constitutes a "home visit" is unclear.

The Government concedes that "[n]either Ohio statute nor APA policy appear to specifically identify the parameters of a home visit." Doc #: 27 at 2. Officer McCort's testimony was likewise unclear as to whether a typical home visit includes an entire sweep of the home, as was done in Colon's case, or just those "home visits" conducted via Operation RAVEN. Doc #: 26 at 46:2-5 (The Court: Of the whole house? You go—you start off the home visit by going through the entire house? McCort: Through Operation RAVEN, yes.). Given Officer McCort's testimony, the Court doubts whether a typical home visit by a probation officer consists of a sweep of the entire home. Additionally, the officers testified that they believed that Colon's girlfriend answered the door and allowed the task force officers to enter. But no officer testified that he witnessed her doing so. To the contrary, Agent McCafferty testified that the officers had already entered the home when they made contact with Colon's girlfriend. Doc #: 26 at 73:14-18. The Court doubts that probation officers conducting routine home visits enter homes without knocking. The fact that Officer Rodriguez detained Colon outside the home does not give the task force officers carte blanche to enter the home to conduct a "home visit." In fact, because Colon was already detained outside the home, there was even less of a need for a "protective sweep" by anyone, let alone a slew of officers other than the one probation officer on the scene. Thus, the Court is hesitant to find that the alleged home visit conducted by Operation RAVEN is the sort that falls under the special needs exception.

Most importantly, the only probation officer on the scene, Officer McCort, did not conduct the "home visit," i.e., the sweep of the home; Agent McCafferty and at least one other detective did. Doc #: 26 at 74:3-16. "[P]robation officers may properly request police assistance in

executing their duties as probation officers." *United States v. Penson*, 141 F. App'x 406, 410 (6th Cir. 2005). But other law enforcement officers may not conduct the home visit themselves. *See United States v. Reyes*, 283 F.3d 446, 470 (2d Cir. 2002) ("regular law enforcement officers are not empowered to conduct the visits that probation officers are required to make to the homes of convicted persons"). In *Reyes*, the Second Circuit determined that "once probation officers observe contraband in plain view on a home visit, regular law enforcement officers . . . may be called upon to seize [the contraband] in the place of the probation officers[.]" *Id.*

Officer McCort was not the first officer to enter the home. Even if a sweep of the entire home is within the scope of a routine home visit, the sole probation officer on the scene did not conduct it. Further, it is unclear from his testimony what Officer McCort was doing as the other officers entered the home and conducted the sweep. It is unclear if he was even present in the home during the sweep. Doc #: 26 at 33:16-37:18. Officer McCort explains what the Operation RAVEN officers collectively did: conducted a safety check, placed Colon's girlfriend and her child on the couch, etc., but he does not explain what he was doing or where he was during this time. *Id.* The Court deducts from Agent McCafferty's testimony that Officer McCort was not part of the safety check or "home visit." *Id.* at 73:14-18. So, when Officer McCort testified about the safety check, he testified as to what other law enforcement officers did, not his own actions. Accordingly, the entry into and subsequent sweep of the home by law enforcement officers other than McCort, the sole probation officer on the scene, cannot be considered a home visit and cannot be justified by the Fourth Amendment's special needs exception.

### III. Conclusion

While individuals on probation are subject to intrusions that the rest of us do not have to countenance, they are still protected by the Fourth Amendment. A probation officer may conduct

an unannounced home visit to ensure compliance with the terms of probation, and if the officer sees a weapon, ammunition, or contraband, the officer may seize it and then conduct a full search for more. But that is not what happened here. Officer McCort was almost an afterthought as a slew of law enforcement officers entered the residence, after securing Colon outside, and conducted a protective sweep of the residence. One of those other officers saw ammunition on a table. Since there was no basis for that officer to be in the residence, the plain view exception does not apply. Accordingly, the ammunition and the firearm and additional ammunition found in the subsequent search of the residence must be suppressed. Colon's Motion to Suppress, Doc #: 21, is **GRANTED.**

    **IT IS SO ORDERED.**

    */s/ Dan Aaron Polster Nov. 7, 2018*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**